UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EASTERN ROOFING SYSTEMS, INC.,
Plaintiff,

v.

SIMON PROPERTY GROUP, INC.,
Defendant.

NO.: 3:14-cv-00717

(SAPORITO, M.J.)

FILED WILKES BARRE
APR 05 2016
Per MS

MEMORANDUM

This is a breach of contract case based upon diversity of citizenship jurisdiction. The matter is before us on the motion for partial summary judgment (Doc. 51) filed by the defendant, Simon Property Group, Inc. ("Simon"). For the reasons set forth below, Simon's motion will be granted in part and denied in part.

## I. BACKGROUND

This matter arises out of a complaint filed against Simon by the plaintiff, Eastern Roofing Systems, Inc. ("Eastern"), in the Court of Common Pleas of Lackawanna County, Pennsylvania. The matter was removed to this court on April 11, 2014. (Doc. 1).[1]

[1]After Simon removed the matter to this court, it moved to transfer the action to the District of New Jersey. (Doc. 5). This court denied the motion to transfer. (Doc. 31).

The complaint alleges that the parties entered into a Service Agreement (the "agreement") for roof rehabilitation for various sections of the roof at the Ocean County Mall located in Toms River, New Jersey. (Doc. 1-1 ¶¶ 5, 12). Eastern is a Pennsylvania corporation (Doc. 1-1 ¶1) and Simon is a Delaware corporation. (Doc. 1-1 ¶2; Doc. 45 ¶2). The project took place in New Jersey. (Doc. 1-1 ¶5; Doc. 45 ¶5). A dispute arose over the amount of the payment due Eastern. Eastern maintains that it performed its obligations under the agreement and Simon has refused to pay for the work. (Doc. 1-1 ¶¶ 14-15). Eastern's complaint consists of four counts: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; and (4) claim for payment under the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501, et seq.

Simon moves for partial summary judgment seeking to dismiss the breach of contract count because it contends that Eastern failed to follow contractual change order procedures. Additionally, it moves for summary judgment on Eastern's unjust enrichment claim because a claim of unjust enrichment cannot proceed in the face of the existence of an express contract and because Eastern did not confer any additional benefit or

value to Simon. It also asserts a contractual claim for the recovery of reasonable attorney's fees for defending the action and filing the instant motion. The motion is fully briefed and is now ripe for a disposition.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion,"

and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

### A. Choice-of-Law

Initially, we note that the agreement does not contain a choice-of-law provision. The parties do not appear to dispute the application of Pennsylvania law. (Doc. 52, at 4 n.3). Simon supports its motion by applying Pennsylvania law. Eastern's opposition brief makes no reference to the law of Pennsylvania, or any other jurisdiction. (Doc. 56). New Jersey law instructs that, "[i]n the interpretation of a contract, the law of the place where the contracted obligation was made ordinarily governs." State Farm Mut. Auto Ins. Co. v. Simmons' Estate, 417 A.2d 488, 491 (N.J. 1980). Here, Eastern alleged in the complaint that the contract was executed in Pennsylvania. (Doc. 1-1 ¶¶ 12, 13). Thus, we find that

Pennsylvania law applies.

B. Breach of Contract

Eastern's breach of contract count in the complaint consists of two claims. First, Eastern's claim of $118,392—related to Change Order No. 4, dated October 2, 2012 and Change Order No. 7, dated February 3, 2014—is for the installation of additional fasteners to the field of the roof. Simon denied both change orders. Second, Eastern's claim of $42,291 is the alleged balance due it under the contract exclusive of this change order claim. Simon's motion for partial summary judgment does not involve Eastern's second contract claim for $42,291.

To prove a breach of contract claim under Pennsylvania law, a plaintiff must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). Here, Simon argues that a written change order had to be executed for it to have a duty to pay Eastern for the installation of additional fasteners. The pertinent provision of the contract states as follows:

> 9. **Excusable Delay; changes in Services; Assignment Prohibited; Separate Contracts**. . . . It is further understood and agreed by the parties that any additional services, labor, materials or equipment which the parties may deem necessary shall be furnished only upon written proposal and bid submitted by Contractor in advance and written approval thereof by Owner in advance. Likewise, any deletions of scheduled services may be made only upon written recommendation by Contractor in advance and with written approval thereof by Owner in advance. Additional services, if any shall be paid for at the price agreed upon by the parties along with the regularly scheduled payments hereunder. Contractor shall be entitled to receive payment only for services approved and agreed upon by Owner in writing, in advance and actually performed and rendered according to the terms and conditions herein provided.

(Doc. 1-1 at 15).

It is undisputed that Eastern submitted change order No. 4 dated October 3, 2012, seeking payment of $118,392 for the installation of the additional fasteners to secure the deck in the field of the roof. Simon denied the change order request claiming that the price for installation of the additional fasteners was included in the base contract price. (Doc. 51-4, at 2). Eastern maintains that the additional fasteners were to be paid

pursuant to the bid unit price of $2.00.

In resolving this issue, for the purpose of determining whether there is a genuine dispute of material fact, we must examine the pertinent provisions of the pre-bid meeting minutes (Doc. 55-1, at 17-22), Eastern's bid (Id. at 24-29), the pre-construction meeting minutes (Id. at 39-42), and the scope of services set out on Exhibit "A" to the agreement. (Id. at 34-37).

A pre-bid meeting was held on March 8, 2012. The pertinent minute notations for that meeting include the following:

> Item #2
>
> The project bids are due on March 19, 2012. @ 5:00 p.m. This is an open shop labor project. See Bid Form for Lump sum pricing, bid breakdowns and line item unit pricing.
>
> Item #16
>
> Deck attachment enhancement shall be included under base bid to meet FM1-29 Data Sheet as noted in the specification and the project estimator assistance. Contractors also to include in the base bid to provide exposing deck and repairing a 4 x 4 area for the purpose of investigating the existing deck fastening as noted in the project estimator assistance.

> Item #19
>
> The new roof systems shall be installed to meet FM-190 Guidelines.

(Id. at 17, 20-21).

A review of the pertinent job specification reveals Simon acknowledged that "Unit prices for both metal deck replacement and rehabilitation of the metal deck are requested on the bid form." (Id. at 11). Thereafter, Eastern submitted its bid on March 21, 2012. (Id. at 24-29). In its bid submission, Eastern listed $2.00 as its "Unit Price per Square Foot if additional metal deck securement is needed in the field of the roof." (Id. at 26). Eastern's general manager executed the agreement on May 8, 2012.

A pre-construction meeting was held on June 29, 2012. Item #4 of the pre-construction meeting minutes relates to removal of the existing roof through deck rehabilitation and replacement. The pertinent provisions of this work item is set out as follows:

> Item #4
>
> This project is specified for a complete removal of the existing roofing system down to the metal deck.

> Sweep the flutes clean prior to the new installation. **Unit prices have been provided on the bid form for deck rehabilitation and replacement.** Eastern Roofing to provide photo documentation and to closely coordinate any unit price work with mall management. Two layers of polylsocyanurate insulation is specified, bottom layer 2" and the top layer 1 ½" with staggered joints. New roof system to be mechanically attached .060 mil reinforced PVC single ply membrane attached to meet FM-1-90 wind uplift guidelines.
>
> An $8,000.00 contingency allowance has been included in the base bid. **The contract will be adjusted using the unit prices provided on the bid form for items including deck rehabilitation or replacement.** Eastern Roofing was reminded that all unit price and allowance work must only be performed with prior authorization by mall management and Roofingprojects.com

(Id. at 40)(emphasis added).

The scope of services set out in Exhibit "A" to the agreement indicates in paragraph 13 as follows:

> In order to Satisfy FM 1-29 Data Sheet for steel deck securement of the field of the exposed steel Deck to meet fastening rates in the current version of FM Datasheet FM 1-29 as follows: *Space FM approved fasteners or welds a maximum of 12 inch*

> *on center (every other rib for 1 ½ in. deck) at all supports in the field of the roof. For FM 1-90 (field rated) construction use FM approved deck fastened minimum of 5/8 in. diameter welds in the field and perimeter and use either on FM approved deck fastener or two welds in each rib in the corner area...Ensure spacing between each side lap fastener or side lap fastener and supported is no more than 36 in. in the field of the roof.*

(Id. at 34) (emphasis and ellipses in original).

On September 6, 2012, a representative of Global Risk Consultants, Simon's agent, corresponded with Eastern's representative and documented "the very specific deck fastening requirements for the field of the roof." (Doc. 51-6, at 2). The pertinent provisions of this letter are set out as follows:

> As we discussed, this particular RoofNav listing has very specific deck fastening requirements for the field of the roof. Additional requirements for the perimeter and corner area are dictated by FM Datasheet 1-29, Paragraph 2.2.7.3.4. You have indicated your intent is to follow these requirements which are summarized here for your quick reference: . . .
>
> Ensure the deck is secured to the structure at 6-in. on center (every flute) in the field of the roof. Any new fasteners should be FM Approved.

(Id.)

The Global Risk letter came after the parties executed the agreement. Until the September 6, 2012 letter, Eastern was required to secure the deck to the structure a minimum of 12-in. on center (every other rib for 1 ½ in. deck) in the field of the roof. A reasonable fact-finder could conclude that this was an approved change by Simon and the parties had already agreed upon a unit price of $2.00 per square foot in additional metal deck securement in the field of the roof as set forth in Eastern's bid, which was accepted by Simon. Even if the additional fasteners were deemed to be a "change in services" necessitating written approval by Simon in advance, Simon obviously knew of these circumstances from the Global Risk letter. Also, in anticipation of the possibility that placement of additional fasteners in the field of the roof would be necessary, Simon required all bidders to submit a unit price to cover that contingency. See James Corp. v. N. Allegheny Sch. Dist., 938 A.2d 474, 487 (Pa. Commw. Ct. 2007)(owner directing contractor to perform additional work, asserting it was required by the contract, cannot disavow liability for costs by claiming contractor did not have written authorization.).

Nevertheless, Simon contends that the email exchange dated March 11, 2013, between David McPolin and Simon to Glenn Clark of Eastern resolves the factual dispute. The substance of this dialogue follows:

At 1:11 p.m. on March 11, 2013, McPolin wrote:

> Glenn,
>
> I believe the only outstanding amount is Invoice #7552 (Pay Application #4) $42,291.90 being held for approval pending receipt and acceptance of the project close out documents. (This will be the final outstanding amount). Is this correct?

(Doc. 51-10, at 2). At 2:37 p.m. that same day, Clark responded:

> That is correct.

(Id.).

In addition, Simon maintains that Eastern abandoned or waived its claim for $118,392 when it submitted its final two-page Application for Payment No. 4 dated December 18, 2012, without claiming the amount of $118,392. (Doc. 51-9, at 2).[2] On the second page of the payment application, it lists the superseding Change Order No. 4 in the amount of

---

[2] We note that the payment application submitted into the record is unsigned by either party.

$4,832. (Id. at 3). Change Order No. 7, reasserting the $118,392 claim, was not submitted until February 3, 2014, more than a year after the submission of the final payment application. The passage of time alone, in the determination of an abandonment of a claim, does not give rise to a conclusive presumption of abandonment or waiver. Barr v. Deiter, 154 A.2d 290, 293 (Pa. Super. Ct. 1959). But a delay is a relevant circumstance in ascertaining the intention of the parties. Priester v. Milleman, 55 A.2d 540, 546 (Pa. Super Ct. 1947). Simon pled waiver as an affirmative defense in its amended answer. (Doc. 45). Abandonment and waiver are affirmative defenses, and the party claiming abandonment or waiver has the burden of proof at trial. Dougherty v. Thomas, 169 A. 219, 223 (Pa. 1933).

While we agree that the email exchange and the delay in submitting Application for Payment No. 4 are persuasive evidence that Eastern did not intend to claim any further amount due on the project other than $42,291.90, we cannot say that a reasonable fact-finder could not accept Eastern's contention that the email was only intended to acknowledge that $42,291.90 was the undisputed amount owed to Eastern. (Doc. 55-1,

at 52). Perhaps Clark would have been more prudent if he included language in his response to McPolin's email that it was Eastern's intent to preserve its claim to $118,392 or submitted Change Order No. 7 in a more timely fashion. However, that is a matter for the fact-finder to decide. Lawson v. Simonsen, 417 A.2d 155, 160 (Pa. 1980). Therefore, we find that a genuine dispute of material fact exists as to whether $118,392 is due Eastern under the agreement, and we will deny Simon's motion as to count I.

C. Unjust Enrichment and Quantum Meruit

In count II, Eastern claims that Simon will be unjustly enriched if it is allowed to retain the materials and services provided by Eastern. Simon argues that Eastern's claims are exclusively governed by the agreement and therefore an equitable remedy for unjust enrichment is barred.[34] We agree.

---

[3] In its motion for partial summary judgment, Simon moves for judgment in its favor as to Count I, breach of contract and Count II, unjust enrichment. It does not specifically request summary judgment as to Count III, quantum meruit. But under Pennsylvania law, unjust enrichment is merely a synonym for quantum meruit Allegheny Gen. Hosp. v. Philip Morros, Inc., 228 F.2d 429 447 (3rd Cir. 2000); Burton Imaging Grp. v. Toys "R" Us, Inc. 502 F. Supp 2d 434, 440 (E.D. Pa.

(continued...)

An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law. Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007). Where a plaintiff claims unjust enrichment, he is required to "show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Bair v. Purcell, 500 F. Supp. 2d 468, 499 (M.D. Pa. 2007)(quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)). Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such benefits by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir.2000); Temple Univ. Hosp., Inc. v. Healthcare

---

[3](...continued)
2007); AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001). Thus, we will construe both counts as one.

Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003). Where unjust enrichment is found, the law implies a quasi-contract between the parties, which requires the defendant to pay the plaintiff the value of the benefit conferred. Walter v. Magee–Womens Hosp., 876 A.2d 400, 407 (Pa. Super. Ct. 2005); Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006)("[T]he doctrine of unjust enrichment contemplates that '[a] person who has been unjustly enriched at the expense of another must make restitution to the other.' ") (citation omitted). For example, unjust enrichment has been applied in circumstances where the defendant has acted wrongfully or fraudulently in appropriating the plaintiff's property. See, e.g., Robbins v. Kristofic, 643 A.2d 1079 (Pa. Super. Ct.1994) (defendant misappropriated plaintiffs' funds); Denny v. Cavalieri, 443 A.2d 333 (Pa. Super. Ct.1982)(financial advisors defrauded plaintiff of funds he gave defendants). It is well settled, however, that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon written agreements, no matter how "harsh the provisions of such contracts may seem in the light of subsequent happenings." Skepton, 895 A.2d at 1254; Mitchell v. Moore, 729 A.2d 1200,

1203 (Pa. Super. Ct.1999)(noting that by its nature, unjust enrichment is inapplicable where a written or express contract exists). As the Court in Skepton explained:

> [T]his bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi-contract [i.e. the parties are not entitled to restitution based on unjust enrichment] because the terms of their agreement (express or implied) define their respective rights, duties, and expectations.

Skepton, 895 A.2d at 1254.

Recognizing that a valid and enforceable written contract exists between the parties, the court agrees with Simon that Eastern's claims for unjust enrichment and quantum meruit cannot proceed against Simon in the face of a fully-executed, express contract between the parties. Therefore, we will grant this portion of Simon's motion.

D. Attorney Fees

Pennsylvania law generally does not permit the award of attorney fees unless there is express statutory authorization, a clear agreement between the parties, or some other established exception. Mosaica Academy Charter Sch. v. Commonwealth Dep't of Educ., 813 A.2d

813, 822–23 (Pa. 2002). In its summary judgment brief, Simon argues that it is entitled to an award of attorney fees pursuant to a contractual provision providing that: "If Owner [(Simon)] is required to bring or defend any action arising out of this Agreement, or to enforce or defend the provisions hereof, Owner shall recover its reasonable attorney's fees and costs from Contractor [(Eastern)]." (Doc. 55-1, at 31 ¶ 11). Simon contends that it has incurred substantial legal fees defending against Eastern's change order and unjust enrichment claims, and thus it is entitled now to reasonable attorney fees incurred in connection with these claims.

But "[c]laims for attorney fees are items of special damage which must be specifically pleaded under Federal Rule of Civil Procedure 9(g). In the absence of allegations that the pleader is entitled to attorney's fees, therefore, such fees cannot be awarded." Maidmore Realty Co. v. Maidmore Realty Co., 474 F.2d 840, 843 (3d Cir. 1973). Simon filed an answer and affirmative defenses to the complaint on April 2, 2015. (Doc. 42). It filed an amended answer and affirmative defenses on April 29, 2015. (Doc. 45). It did not, however, file a counterclaim for attorney fees

under its contract with Eastern. Nor did either the original or amended answer include any reference to any claim that Simon was entitled to an award of attorney fees under the contract.

Moreover, we are of the opinion that an award of attorney fees is premature at this time, and that the appropriate vehicle for seeking an award of attorney fees for work done during this case is a Rule 54(d)(2) motion, after a dispositive decision has been entered. Rissman v. Rissman, 229 F.3d 586, 588 (7th Cir. 2014) ("Fees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award."); see also Telecom S. Am., Inc. v. Presto Telecommunications, Inc., No. Civ.A. 01-CV-0680, 2003 WL 22462236, at *3 (E.D. Pa. Oct. 28, 2003) (quoting Rissman). *See generally* Fed. R. Civ. P. 54(d)(2).

Accordingly, we will deny the motion with respect to its request for recovery of reasonable attorney fees under the contract.

    An appropriate order follows:

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: April 5, 2016