UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EASTERN ROOFING            :
SYSTEMS, INC.,             :
      Plaintiff,        :        NO.: 3:14-cv-00717
                        :
      v.                :
                        :        (SAPORITO, M.J.)
SIMON PROPERTY GROUP,      :
INC.,                      :
      Defendant.        :

## MEMORANDUM

This is a breach of contract case based upon diversity of citizenship jurisdiction. The plaintiff, Eastern Roofing Systems, Inc. ("Eastern"), brought this action for breach of contract under a Service Agreement (the "Agreement") for roof rehabilitation for various sections of the roof at the Ocean County Mall located in Toms River, New Jersey. A non-jury trial was held on July 19, 2016, through July 21, 2016.  Set forth herein are the court's factual findings and legal conclusions pursuant to Fed. R. Civ. P. 52. Because we find that Eastern has satisfied its burden of proving breach of contract, judgment will be entered in favor of Eastern and against Simon in the amount of $5,000.90 plus prejudgment interest.

I.   <u>Background</u>

This matter arises out of a complaint filed against Simon by Eastern in the Court of Common Pleas of Lackawanna County, Pennsylvania. The matter was removed to this court on April 11, 2014. (Doc. 1).[1]

The complaint alleged that the parties entered into the Agreement for roof rehabilitation for various sections of the roof at the Ocean County Mall located in Toms River, New Jersey. (Doc. 1-1 ¶¶ 5, 12). Eastern is a Pennsylvania corporation (Doc. 1-1 ¶1) and Simon is a Delaware corporation. (Doc. 1-1 ¶2; Doc. 45 ¶2). The project took place in New Jersey. (Doc. 1-1 ¶5; Doc. 45 ¶5).  A dispute arose over the amount of the payment due to Eastern. Eastern maintains that it performed its obligations under the agreement and Simon has refused to pay for the work. (Doc. 1-1 ¶¶ 14-15). Eastern's complaint consisted of four counts: (1) breach of contract; (2) unjust enrichment; (3) quantum meruit; and (4) claim for payment under the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501, <u>et</u> <u>seq.</u>

---

[1]After Simon removed the matter to this court, it moved to transfer the action to the District of New Jersey. (Doc. 5).  This court denied the motion to transfer. (Doc. 31).

Simon moved for partial summary judgment (Doc. 51) seeking to dismiss the breach of contract count because it contended that Eastern failed to follow contractual change order procedures. Additionally, it moved for summary judgment on Eastern's unjust enrichment claim because the claim of unjust enrichment cannot proceed in the face of the existence of an express contract and because Eastern did not confer any additional benefit or value to Simon. On April 5, 2016, we issued our Memorandum and Order (Docs. 64 and 65) granting in part and denying in part Simon's motion for summary judgment. We dismissed Eastern's unjust enrichment and quantum meruit claims.  At the trial, Eastern withdrew its claim for payment under the Pennsylvania Contractor and Subcontractor Payment Act as that act only permits recovery for projects that are completed within the Commonwealth of Pennsylvania. See 53 P.S. §701, et seq.   At trial, the only claim left for our consideration was Eastern's breach of contract claim.

II.   Discussion

A.   Breach of Contract

Eastern's breach of contract count in the complaint consists of two claims.  First, Eastern's claim of $42,291.90 is the alleged balance due it

3

under the contract exclusive of the additional fasteners claim.  Second, Eastern's claim of $118,392—related to Change Order No. 4 dated October 2, 2012, and Change Order No. 7 dated February 3, 2014—is for the installation of additional fasteners to the field of the roof. To prove a breach of contract claim under Pennsylvania law, a plaintiff must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

B.    $42,291.90 claim

At trial, Eastern proved the existence of a contract between it and Simon. (P-5). It also proved that it was owed the balance of $42,291.90 and that on July 5, 2014, three years and four months after Simon received approval from Roofingprojects.com to pay the balance, Simon paid Eastern, $37,291 without an explanation.  At trial, Simon introduced D-32 into evidence which was an email from defense counsel to plaintiff's counsel dated June 28, 2016 which purported to offer an explanation as to how "counsel" and not Simon analyzed the payment.

Under the agreement, Simon was required to pay Eastern within thirty days of approval of its application for payment. Eastern submitted

its final application for payment on December 18, 2012. Simon, through Roofingprojects.com, made a final review of the payment application. Lee Frizzell of Roofingprojects.com testified that on or about March 25, 2013, he recommended that Simon make final payment to Eastern in the amount of $42,291.90. Thus, payment in the amount of $42,291.90 was due Eastern as of April 24, 2013.

At trial, Simon's representative on the project, David McPolin, testified that Simon never disputed Eastern's payment request for $42,291.90. As Simon failed to pay Eastern the balance of $42,291.90 within thirty (30) days of approval by Roofingprojects.com, Simon breached the contract which resulted in Eastern's damages. Pennsylvania law is clear on the recovery of prejudgment interest: "[p]re-judgment interest in Pennsylvania contract cases is a matter of right and is calculated from the time the money becomes due or payable." <u>Am. Enka Co. v. Wicaco Mach. Corp.</u>, 686 F.2d 1050, 1056 (3d Cir.1982) (citing <u>Penneys v. Pa. R.R. Co.</u>, 183 A.2d 544 (Pa. 1962)). As to the rate of interest, "the party to whom the sum is owed may as a matter of right recover prejudgment interest at the legal rate of six percent [per annum] running from the date the sum is due." <u>Pollice v. Nat'l Tax Funding, L.P.</u>,

225 F.3d 379, 395 (3d Cir.2000) (citing <u>Am. Enka Co.</u>, 686 F.2d at 1056-57); <u>see also</u> 41 Pa. Cons. Stat. Ann. § 202 (setting legal rate of interest at six percent per annum).  As the prevailing party, Eastern is entitled to this amount, and no equitable considerations counsel against awarding it to Eastern. Therefore, Eastern is entitled to the remaining balance of $5,000.90 due under the Agreement, plus prejudgment interest on $42,291.90 from April 24, 2013, through July 5, 2016, at the legal rate of interest under Pennsylvania law ($8,112.54) and prejudgment interest on $5,000.90 from July 5, 2016, through the date of this Memorandum ($22.19), for a total of $13,135.63.

C.    <u>$118,392 Additional Fasteners Claim</u>

On March 5, 2015, Simon issued a Request for Proposal ("RFP")(Ex. P-2), the specifications of which were prepared by Roofingprojects.com. Simon argues that a written change order had to be executed for it to have a duty to pay Eastern for the installation of additional fasteners. The pertinent provision of the contract states as follows:

> 9. **Excusable Delay; changes in Services; Assignment Prohibited; Separate Contracts**. . . . It is further understood and

> agreed by the parties that any additional services, labor, materials or equipment which the parties may deem necessary shall be furnished only upon written proposal and bid submitted by Contractor in advance and written approval thereof by Owner in advance. Likewise, any deletions of scheduled services may be made only upon written recommendation by Contractor in advance and with written approval thereof by Owner in advance. Additional services, if any shall be paid for at the price agreed upon by the parties along with the regularly scheduled payments hereunder. Contractor shall be entitled to receive payment only for services approved and agreed upon by Owner in writing, in advance and actually performed and rendered according to the terms and conditions herein provided.

(Ex. P-5).

It is undisputed that Eastern submitted Change Order No. 4 dated October 3, 2012, seeking payment of $118,392 for the installation of the additional fasteners to secure the deck in the field of the roof. Eastern maintained that the additional fasteners were to be paid pursuant to the bid unit price of $2.00. On October 16, 2012, Simon denied the change order request claiming that the price for installation of the additional fasteners was included in the base contract price. (Ex. D-24).  In resolving this claim, we find the following facts to be relevant.

7

A pre-bid meeting was held on March 8, 2012. The pertinent minute notations for that meeting include the following:

Item #2

The project bids are due on March 19, 2012. @ 5:00 p.m. This is an open shop labor project. See Bid Form for Lump sum pricing, bid breakdowns and line item unit pricing.

Item #16

Deck attachment enhancement shall be included under base bid to meet FM1-29 Data Sheet as noted in the specification and the project estimator assistance. Contractors also to include in the base bid to provide exposing deck and repairing a 4 x 4 area for the purpose of investigating the existing deck fastening as noted in the project estimator assistance.

Item #19

The new roof systems shall be installed to meet FM-190 Guidelines.

(Ex. P-3). Neither party confirmed at the trial whether an Eastern representative attended the conference.

A review of the pertinent job specification reveals Simon acknowledged that "Unit prices for both metal deck replacement and

rehabilitation of the metal deck are requested on the bid form." (<u>Id.</u>).
Thereafter, Eastern submitted its bid on March 21, 2012. (P-6). In its bid
submission, Eastern listed $2.00 as its "Unit Price per Square Foot if
additional metal deck securement is needed in the field of the roof." (<u>Id.</u>).
Eastern's general manager executed the agreement on May 5, 2012.

A pre-construction meeting was held on June 29, 2012.  Item #4 of
the pre-construction meeting minutes relates to removal of the existing
roof through deck rehabilitation and replacement. The pertinent
provisions of this work item is set out as follows:

> <u>Item #4</u>
>
> This project is specified for a complete removal of
> the existing roofing system down to the metal deck.
> Sweep the flutes clean prior to the new
> installation. **Unit prices have been provided on
> the bid form for deck rehabilitation and
> replacement.** Eastern Roofing to provide photo
> documentation and to closely coordinate any unit
> price work with mall management. Two layers of
> polylsocyanurate insulation is specified, bottom
> layer 2" and the top layer 1 ½" with staggered
> joints. New roof system to be mechanically
> attached .060 mil reinforced PVC single ply
> membrane attached to meet FM-1-90 wind uplift
> guidelines.
>
> An $8,000.00 contingency allowance has been
> included in the base bid. **The contract will be**

> **adjusted using the unit prices provided on the bid form for items including deck rehabilitation or replacement.** Eastern Roofing was reminded that all unit price and allowance work must only be performed with prior authorization by mall management and Roofingprojects.com

(Ex. P-11)(emphasis added). An Eastern representative attended this conference.

The scope of services set out in Exhibit "A" to the agreement indicates in paragraph 13 as follows:

> In order to Satisfy FM 1-29 Data Sheet for steel deck securement of the field of the exposed steel Deck to meet fastening rates in the current version of FM Datasheet FM 1-29 as follows: *Space FM approved fasteners or welds a maximum of 12 inch on center (every other rib for 1 ½ in. deck) at all supports in the field of the roof. For FM 1-90 (field rated) construction use FM approved deck fastened minimum of 5/8 in. diameter welds in the field and perimeter and use either on FM approved deck fastener or two welds in each rib in the corner area...Ensure spacing between each side lap fastener or side lap fastener and supported is no more than 36 in. in the field of the roof.*

(Ex. P-5) (emphasis and ellipses in original).

On September 6, 2012, a representative of Global Risk Consultants, Simon's agent, corresponded with Eastern's representative and documented "the very specific deck fastening requirements for the field of the roof." (Ex. P-8). The pertinent provisions of this letter are set out as follows:

> As we discussed, this particular RoofNav listing has very specific deck fastening requirements for the field of the roof. Additional requirements for the perimeter and corner area are dictated by FM Datasheet 1-29, Paragraph 2.2.7.3.4. You have indicated your intent is to follow these requirements which are summarized here for your quick reference: . . .
>
> Ensure the deck is secured to the structure at 6-in. on center (every flute) in the field of the roof. Any new fasteners should be FM Approved.

(Id.)

The Global Risk letter came after the parties executed the agreement. Until the September 6, 2012, letter, Eastern was required to secure the deck to the structure a minimum of 12-inches on center (every other rib for 1 ½-inch deck) in the field of the roof. We find that this was an approved change by Simon and the parties had already agreed upon a unit price of $2.00 per square foot in additional metal deck securement in

the field of the roof as set forth in Eastern's bid, which was accepted by Simon. Even if the additional fasteners were deemed to be a "change in services" necessitating written approval by Simon in advance, Simon obviously knew of these circumstances from the Global Risk letter. Also, in anticipation of the possibility that placement of additional fasteners in the field of the roof would be necessary, Simon required all bidders to submit a unit price to cover that contingency. See James Corp. v. N. Allegheny Sch. Dist., 938 A.2d 474, 487 (Pa. Commw. Ct. 2007) (owner directing contractor to perform additional work, asserting it was required by the contract, cannot disavow liability for costs by claiming contractor did not have written authorization.).

D.    Agency Relationship

Before the commencement of the trial, Simon presented the court with a motion for dismissal of change order 4 claim or in the alternative exclusion of evidence pursuant to Rule 37.  (Doc. 87).  Simon alleged that on the eve of trial, it received two documents that Eastern had in its possession since the filing of suit in September 2013.  The documents consisted of a waiver of liens (Ex. D-30) signed by Eastern and a printout of an online question and answer form created as part of the bid

12

documents (Ex. P-9) prepared by Roofingprojects.com, Simon's contracted construction manager.  At the argument on the motion, Eastern denied ever having the waiver in its possession after it was executed.  We held our ruling in abeyance until the documents became an issue at trial. During the course of the trial, we denied Simon's motion (Doc. 87) and held that Exhibit D-30 was admissible upon authentication and we would thereafter give it our interpretation based upon the four corners of the document.   We also ruled that Exhibit P-9 was admissible because Eastern established an agency relationship between Simon and Roofingprojects.com and therefore Exhibit P-9 was deemed a Simon document. See Fed. R. Evid. 801(d)(ii)(D).

There are three basic elements for a principal-agent relationship: (1) manifestation by a principal that an agent shall act for the principal; (2) the agent's acceptance of the undertaking; and (3) the parties' understanding that the principal is to be in control of the undertaking. Basile v. H & R Block, Inc., 761 A.2d 1115, 1120 (Pa. 2000). An agency relationship may exist "only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Smalich v. Westfall, 269 A.2d 476, 480 (Pa. 1970). The party asserting an agency

relationship has the burden of establishing such relationship. <u>Basile</u>, 761 A.2d at 1120; <u>Wilson Area Sch. Dist. v. Skepton</u>, 860 A.2d 625, 630 (Pa. Commw. Ct. 2004).

The facts elicited at trial demonstrated that Simon and Roofingprojects.com entered into an agreement whereby, Roofingprojects.com would serve as the construction manager and bid procurer of the project. The testimony showed that the agreement entered into between Simon and Roofingprojects.com was a written agreement; however, neither party offered it into evidence. Under their agreement, Roofingprojects.com undertook the responsibility of preparing both the RFP and the bid specifications, which were attached to the Agreement, a form agreement used and prepared by Simon. Roofingprojects.com was also required to receive the bids, answer questions from prospective bidders, tabulate the bids, conduct a pre-bid conference, conduct a pre-construction conference, prepare and circulate the meeting minutes, handle inquiries while the project was in progress, resolve all matters relating to the quality and quantity of the work, and make a determination if the project was substantially complete. In addition, Roofingprojects.com approved applications for payment and determined

14

the validity of the proposed change orders submitted by Eastern. Roofingprojects.com also determined whether the close-out documents were satisfactory, confirmed the balance owed to Eastern based upon those submissions, and made recommendations regarding payment. Finally, Roofingprojects.com informed Simon in late March 2013 that Eastern should be paid the requested amount of $42,291.90. There is no doubt Simon intended that Roofingprojects.com act for it throughout the project not just regarding the physical aspects of the project, but also concerning the administration of it as well. Roofingprojects.com clearly accepted the undertaking with the understanding that Simon was in control of the contract as it made the ultimate decisions whether to pay Eastern.

E.    Waiver of Claim for Additional Fasteners

Simon maintains that Eastern abandoned or waived  its claim for $118,392 through its actions after Change Order No. 4 dated October 3, 2012, was rejected. We agree.   On the second page of the payment application No. 3, it lists a superseding Change Order No. 4 in the amount of $4,832. "Ex. D-14,". Change Order No. 7, reasserting the $118,392 claim, was not submitted until February 3, 2014, more than a year after

the submission of the final payment application.

A waiver in law is the act of intentionally relinquishing or abandoning some known right, claim, or privilege. Brown v. City of Pittsburgh, 186 A.2d 399, 401 (Pa. 1962). To constitute a waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party with knowledge of such right and an evident purpose to surrender it. Id. Waiver is essentially a matter of intention. It may be express or implied. Id. "[I]n the absence of an express agreement, a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, *to his prejudice*, into the honest belief that such waiver was intended or consented to." Id. (emphasis in original). In short, the doctrine of implied waiver in Pennsylvania applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show *that he was misled and prejudiced thereby*. Id. The passage of time alone, does not give rise to a conclusive presumption of waiver. Barr v. Deiter, 154 A.2d 290, 293 (Pa. Super. Ct. 1959). But a delay is a relevant circumstance in ascertaining the intention of the parties. Priester v. Milleman, 55 A.2d 540, 546 (Pa.

Super. Ct. 1947). Simon pled waiver and estoppel as an affirmative defense in its amended answer. (Doc. 45). Waiver is an affirmative defense, and the party asserting it has the burden of proof at trial. Dougherty v. Thomas, 169 A. 219, 223 (Pa. 1933).

Simon contends that the email exchange dated March 11, 2013, between David McPolin of Simon to Glenn Clark of Eastern resolves the issue. The substance of this dialogue follows:

At 1:11 p.m. on March 11, 2013, McPolin wrote:

> Glenn,
>
> I believe the only outstanding amount is Invoice #7552 (Pay Application #4) $42,291.90 being held for approval pending receipt and acceptance of the project close out documents. (This will be the final outstanding amount). Is this correct?

(Ex. D-24). At 2:37 p.m. that same day, Clark responded:

> That is correct.

(Id.).

Waiver is an affirmative defense and it is Simon's burden to prove it. Here, Simon produced persuasive evidence that Eastern intentionally relinquished or abandoned its additional fasteners claim by Eastern's failure to persist in its efforts to recover the sum of $118,392.

17

As discussed above, Simon's motion (Doc. 87) was denied; however, we allowed the waiver (Ex. D-30) into evidence upon proper authentication. During the course of the trial, the document was properly authenticated and thereafter admitted into evidence.

The document (Ex. D-30), prepared by Eastern as part of the close-out documents, is titled "Full Unconditional Waiver of Lien."  Simon was not in possession of the document until the eve of trial when it was provided to defense counsel by Lee Frizzell of Roofingprojects.com. (Doc. 87, at 1).  Simon maintains that Exhibit D-30 is a complete bar to Eastern making any other claim beyond $42,291.90. We do not agree that the document, by itself, bars Eastern from making a claim for additional payment, but rather, it can be used as evidence to ascertain Eastern's intention whether it abandoned any other outstanding claims.

Upon review of Exhibit D-30, Eastern's construction lien rights and claims for further payment were to be waived and released upon receipt of payment. As the document itself states, Eastern executed it "[f]or the purpose of inducing and receiving payment" from Simon. (Ex. D-30). Further, a fair reading of Exhibit D-30 confirms Eastern's intention that the legal effect of the release and waiver became effective upon receipt of

payment of $42,291.90. For example, the first unnumbered paragraph of

Exhibit D-30 states as follows:

> I/We have a contract with Simon Property Group
> (Other Contracting Party) to Provide roofing for the
> improvements to the property described as the
> Ocean County Mall, having been fully paid and
> satisfied <u>upon</u> <u>receipt</u> of $42,291.90 all my/our
> construction lien rights against such property are
> hereby waived and released, without exception.

(<u>Id.</u> (emphasis added)).

Also, pursuant to representation and warranty No. 9 contained

within the document, payment, "once received," constitutes a full and

complete payment for work performed. (<u>Id.</u>)  Despite these provisions, we

cannot overlook that the document contains admissions by a party.  For

example, we point out that the document was notarized which makes it a

sworn statement signed by John Basalyga, the president of Eastern. The

document contains additional warranties and representations which we

deem to be significant statements by a party. The first additional

warranty and representation states that John Basalyga had full authority

to execute the document on behalf of Eastern. The second additional

warranty and representation states that Mr. Basalyga has personal

knowledge of the facts sworn to in the document and that such facts are

true and correct.  The sixth additional warranty and representation states that Mr. Basalyga was "[n]ot aware of any Claims of Lien, Notices of Lien, or any suits or claims for payment, loss or damage of any kind, nature or description which might constitute a lien or encumbrance upon the property as of the date" of the document—March 25, 2013. These statements of fact when construed with the totality of the facts elicited throughout the trial compel us to deny and dismiss Eastern's additional fasteners claim.

The facts presented during the trial which lead us to this conclusion include the following: (1) Sometime prior to October 3, 2012, a representative of Eastern orally requested Lee Frizzell of Roofingprojects.com whether Simon would pay Eastern for the installation of additional fasteners in the field of the roof which request was denied; (2)  on October 3, 2012, Eastern submitted Change Order No. 4 requesting payment of $118,392 for the installation of additional fasteners; (3) on October 16, 2012, Simon rejected the change order; (4) Eastern submitted a revised Change Order No. 4 dated December 3, 2012, unrelated to the original change order; (5) at no time throughout the process of submitting applications for payment did Eastern make any

reference to the rejected change order; (6) none of the applications for payment submitted by Eastern contain any reference, statement, or comment about the rejected change order; (7) when asked in an email to confirm that the only outstanding amount due Eastern was $42,291.90, Glenn Clark, Eastern's controller, confirmed that $42,291.90 was indeed the only outstanding amount due; (8) no one from Eastern documented Eastern's additional fasteners claim as an outstanding amount due as Eastern made its efforts to only collect the balance of $42,291.90; (9) Eastern's representatives claim they made efforts telephonically to collect the amount due for the installation of additional fasteners without any written record memorializing those efforts or any other corroborating evidence ; (10)  Eastern made no further written attempt to make a claim for installation of additional fasteners until February 3, 2014, more than a year after the work on the project was completed; (11) Eastern filed a writ of summons in the Court of Common Pleas of Lackawanna County on September 9, 2013, which did not itemize its claim; and (12) after having been ruled to file a complaint, Eastern made the additional fasteners claim part of its complaint which was filed on March 17, 2014. These facts, taken together with the statements contained in the sworn document (Ex.

D-30) signed by Mr. Basalyga of Eastern that as of March 25, 2013, no further claims existed, compel us to deny Eastern's additional fasteners claim.

IV.   <u>Findings of Fact</u>

1.   The plaintiff, Eastern Roofing Systems, Inc. is a Pennsylvania corporation.

2.   The defendant, Simon Property Group, Inc., is a Delaware corporation.

3.   On March 5, 2012, Simon, working with Roofingprojects.com issued an RFP for replacement of the roof of the Ocean County Mall located in Toms River, New Jersey (the "Project"). At the time of the RFP, the Mall's steel roof deck was secured in the field of the roof with one metal deck fastener per foot.

4.   The Project's Scope of Work as described in the RFP included a requirement in specification 13, "to meet fastening rates in the current version of the FM Datasheet FM 1-19 by spacing FM approved fasteners or welds a maximum of 12 in. on center . . . at all supports in the field of the roof."

5.   Roofingprojects.com was engaged by Simon in order to manage

the Project pursuant to a construction management agreement entered into between them.

6.    Roofingprojects.com held a pre-bid meeting on March 8, 2012.

7.    At the pre-bid meeting, discussion took place regarding the deck attachment enhancement.

8.    Item 16 of the meeting minutes of March 8, 2012 states as follow: deck attachment enhancement shall be included under base bid to meet FM 1-29 Data Sheet as noted in the specification and the project estimator assistance. Contractors also to include in the base bid to provide exposing deck and repairing a 4' x 4' area for the purpose of investigating the existing deck fastening as noted in the project estimator assistance.

9.    All bidders were required to access Simon's bid form on roofingprojects.com and utilize it in the submission of their bids.

10.    Simon's bid form contains line items for both lump sum pricing and unit pricing. The bid form contains a line item seeking a price per square foot for securement within the roof field ("field unit price line item").

11.    The  scope  of  services set out in Exhibit A to the agreement states in paragraph 13 as follows:

"in order to Satisfy FM 1-29 Data Sheet for steel deck securement of the field of the exposed steel Deck to meet fasten rates in the current version of FM Data Sheet 1-29, as follows: *Space FM approved fasteners for weld a maximum of twelve inch on center (every other rib for one and one-half in Deck) at all supports in the field of the roof.* For FM 1-90 (field rated) construction use FM approved deck fastened a minimum of 5/8 in. Diameter welds in the field and perimeter and use either on FM approved deck fastener or two welds in each rib in the corner area . . . ensure spacing between each side lap fastener or side lap fastener and supported is no more than 36 in. in the field of the roof.

12.   On March 21, 2012, Eastern submitted its bid.

13.   On May 4, 2012, Eastern's bid was accepted by Simon.

14.   Eastern and Simon entered into a Service Agreement dated May 4, 2012, which covered the Project.

15.   Eastern electronically signed the agreement on May 5, 2012.

16.   On June 29, 2012, Eastern, Simon, and Roofingprojects.com participated in a pre-construction meeting.

17.   Item 4 of the pre-construction meeting minutes relating to removal of the existing roof through deck rehabilitation and replacement was set out in pertinent part, as follows:

This project is specified for a complete removal of the existing roofing system down to the metal deck.

Sweep the flutes clean prior to the new installation. **Unit prices have been provided on the bid form for deck rehabilitation and replacement.** Eastern Roofing to provide photo documentation and to closely coordinate any unit price work with mall management. Two layers of polylsocyanurate insulation is specified, bottom layer 2" and the top layer 1 ½" with staggered joints. New roof system to be mechanically attached .060 mil reinforced PVC single ply membrane attached to meet FM-1-90 wind uplift guidelines.

An $8,000.00 contingency allowance has been included in the base bid. **The contract will be adjusted using the unit prices provided on the bid form for items including deck rehabilitation or replacement.** Eastern Roofing was reminded that all unit price and allowance work must only be performed with prior authorization by mall management and Roofingprojects.com

18.   Eastern's bid included $2.00 per square foot between within the Field Securement Unit Price Line Item.

19.   Eastern submitted Change Orders Nos.1, 2, and 3 on October 3, 2012.

20.   On September 6, 2012, a representative of Global Risk Consultants, Simon's agent, corresponded with Eastern's representative and documents "the very specific deck fastening requirements for the field

of the roof.  The pertinent provisions of the letter are set out as follows:

> As we discussed, this particular RoofNav listing has very specific deck fastening requirements for the field of the roof. Additional requirements for the perimeter and corner area are dictated by FM Datasheet 1-29, Paragraph 2.2.7.3.4. You have indicated your intent is to follow these requirements which are summarized here for your quick reference: . . .
>
> Ensure the deck is secured to the structure at 6-in. on center (every flute) in the field of the roof. Any new fasteners should be FM Approved.

21.    On October 3, 2012, Eastern submitted Change Order No. 4 in the amount of $118,392 for additional fasteners for 59,196 square feet in the field at $2.00 per square foot.

22.    On October 16, 2012, Roofingprojects.com, through Lee Frizzell, rejected Change Order No. 4 because "the work described in Change Order #4 is included in the base bid work."

23.    Before the Global Risk letter dated September 6, 2012, Eastern was required to secure the deck to the structure a minimum of 12 in. on center (every other rib for one and one-half inch Deck) in the field of the roof.

24.    Eastern resubmitted the claim originally set forth in Change

Order No. 4 through Change Order No. 7 dated February 3, 2014.

25.    Eastern submitted four applications for payment:

        a.    Application No. 1 dated September 25, 2012. (Ex. D-11);

        b.    Application No. 2 dated November 8, 2012. (Ex. D-12);

        c.    Application No. 3 dated December 18, 2012. (Ex. D-14); and

        d.    Application No. 4 dated December 18, 2012. (Ex. D-15).

None of the applications make any reference, statement, or comment about rejected Change Order No. 4.

26.    As of July 31, 2013, Eastern  submitted a Statement  listing a balance due in the amount of $42,291.90.

27.    On February 3, 2014, Eastern submitted Change Order No. 7 seeking payment of $118,392 for the placement of the additional fasteners for 59,196 sq. ft. in the field of the roof at $2.00 per square foot.

28.    Pursuant  to  Exhibit  "A"  (scope of services) attached  to  the Agreement (Ex. P-5), Eastern was to include in its lump sum base bid a contingency allowance of $25,000.

29.    The bid form which was prepared by Simon that the

contingency allowance for roof sections C-1, C-2, C-3, and C-5 is $8,000. and for the same roof sections an Interior Protection Allowance is $12,000. for a total of $20,000 in contingency allowances.

30.     Eastern submitted its final application for payment on December 18, 2012.

31.     Simon, through Roofingprojects.com, made a final review of the payment application.

32.     On or about March 25, 2013, Lee Frizzell of Roofingprojects.com recommended that Simon make final payment to Eastern in the amount of $42,291.90.

33.     Simon's representative on the project, David McPolin never disputed Eastern's payment request for $42,291.90.

34.     Simon failed to pay Eastern the balance of $42,291.90 within thirty (30) days of approval by Roofingprojects.com.

35.     Simon and Roofingprojects.com entered into an agreement whereby Roofingprojects.com would serve as the construction manager and bid procurer of the project.

36.     The agreement entered into between Simon and Roofingprojects.com was a written agreement; however, neither party

offered it into evidence.

37.   Under their agreement with Simon, Roofingprojects.com undertook the following responsibilities:

a.   prepare the RFP;

b.   prepare the bid specifications which were attached to the Service Agreement, a form agreement used and prepared by Simon;

c.   receive the bids, answer questions from prospective bidders, tabulate the bids, conduct a pre-bid conference, conduct a pre-construction conference, prepare and circulate the meeting minutes, handle inquiries while the project was in progress, resolve all matters relating to the quality and quantity of the work, and make a determination if the project was substantially complete.

d.   approve applications for payment and determine the validity of the proposed change orders submitted by Eastern; and

e.   determine whether the close-out documents were satisfactory, and confirm the balance owed to Eastern based upon those submissions and make recommendations of payment.

38.   Roofingprojects.com informed Simon in late March 2013 that Eastern should be paid the requested amount of $42,291.90.

39.   John Basalyga, the President of Eastern, signed a sworn document titled "Full Unconditional Waiver of Lien" (Ex. D-30) on March 25, 2013, attesting to the following facts:

    a.    he had full authority to execute the document on behalf of Eastern;

    b.    he has personal knowledge of the facts sworn to in the document and that such facts are true and correct; and

    c.    he was not aware of any claims of lien, notices of lien or any suits or claims for payment, loss or damage of any kind, nature or description which might constitute a lien or encumbrance upon the property as of March 25, 2013.

40.    On October 3, 2012, Eastern submitted Change Order No. 4 requesting payment of $118,392 for the installation of additional fasteners.

41.    On October 16, 2012, Simon rejected the change order.

42.    Eastern submitted a revised Change Order No. 4 dated December 3, 2012, unrelated to the original change order.

43.    At no time throughout the process of submitting applications for payment did Eastern make any reference to the rejected change order.

44.    None of the applications for payment submitted by Eastern contain any reference, statement, or comment about the rejected change order.

45.    When asked in an email to confirm that the only outstanding amount due Eastern was $42,291.90, Glenn Clark, Eastern's controller, confirmed that $42,291.90 was the only outstanding amount due.

46.    No one from Eastern documented Eastern's additional fasteners claim as an outstanding amount due as Eastern made its efforts to only collect the balance of $42,291.90.

47.    Eastern made no further attempt to make a claim for the installation of additional fasteners until February 3, 2014, more than a year after the work on the project was completed.

48.    Eastern filed a writ of summons in the Court of Common Pleas of Lackawanna County on September 9, 2013, which did not itemize its claim.

49.    After having been ruled to file a complaint, Eastern made the additional fasteners claim part of its complaint which was filed on March 17, 2014.

V.    Conclusions of Law

1.    The court has jurisdiction of this case under 28 U.S.C. §1332.

2.    Simon breached the agreement entered into with Eastern.

3.    Eastern is entitled to $5,000.90 in compensatory damages together with prejudgment interest.

4.    To the extent that Eastern had a claim for $118,392 for the installation of additional fasteners, it waived and/or abandoned it.

An appropriate order follows.

_**s/ Joseph F. Saporito, Jr.**_
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 1, 2016